IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

PATRICIA A. COBB                                                                 PLAINTIFF

v.                               CIVIL NO. 03-3070

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Patricia A. Cobb brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on February 22, 1999, alleging an inability to work since February 1, 1999, due to epilepsy.[1] (Tr. 88-90, 455-458). An administrative hearing was held on April 16, 2001. (Tr. 30-66). Plaintiff was present and represented by counsel.

By written decision dated May 23, 2001, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 22). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of

---

[1] Plaintiff's alleged onset date was amended at the hearing on April 16, 2001. (Tr. 42).

severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found plaintiff retained the residual functional capacity (RFC) for heavy exertional work activity with the limitation of a need to avoid all hazards, including driving. With the help of vocational expert testimony, the ALJ found plaintiff could return to her past relevant work as a factory sewing worker, product inspector, factory packager, baker, cook, cashier, order filler and fiberglass roller. (Tr. 22).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on August 31, 2001. (Tr. 11-12). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1).

Defendant filed a motion to remand pursuant to sentence six of 42 U.S.C. §405(g), in order to locate the missing tape recording of the hearing held on April 16, 2001. (Doc.# 6). This court granted this motion on February 4, 2004. (Doc. # 7). After locating the missing tape, defendant filed a motion to re-instate the case on August 3, 2004. (Doc. #9). This court granted the motion on August 4, 2004. (Doc. # 10). Defendant filed an Answer and transcript on August 11, 2004. (Doc. # 11). Both parties were afforded the opportunity to file an appeal brief; however, only defendant chose to do so. (Doc. # 12). This case is before the undersigned pursuant to the consent of the parties.

**Evidence Presented:**

At the time of the administrative hearing on April 16, 2001, plaintiff was thirty-seven years of age and possessed a high school education. (Tr. 34-35). Plaintiff has a driver's license but testified she has not driven in over a year due to seizures. (Tr. 41).

AO72A
(Rev. 8/82)

Plaintiff testified that because of problems with her seizures she has not worked since February of 1999. (Tr. 36-43). Since February of 1999, plaintiff testified that the longest trip she has made was to Pine Bluff which is about four hours from her home. (Tr. 42-43).

Plaintiff testified she also goes to the grocery store, to church once in a while, to garage sales once every two months and to the laundromat. (Tr. 43-44). Plaintiff testified that she does not prepare any meals on the stove, do yard work, vacuum or mop. (Tr. 44).

Plaintiff testified she is usually tired during the day because she does not sleep well at night. (Tr. 45). On a typical day she will wake up her nieces for school and will then lay on the couch. Plaintiff testified that her ability to walk, stand and sit have not changed but due to her shoulder problems she does have difficulty lifting. (Tr. 52-53). Plaintiff testified she could lift twenty-five pounds off the ground with both hands .(Tr. 53). She did not know how much she could lift off of a table.

When asked why she is unable to work, plaintiff testified that she has seizures. (Tr. 45). She reported that she experiences about three to four full seizures a month. (Tr. 45-46). Plaintiff testified she usually has a seizure when she is up and about and can now feel one when it is "coming on." When she feels one starting she lays down so that she can keep herself under control and stop herself from going into a full seizure. (Tr. 46). Plaintiff testified that she does not lose consciousness but will have to lay down for about thirty minutes. (Tr. 47).

If she is unable to stop herself from going into a full seizure, plaintiff testified she will start to shake and will pass out. (Tr. 48). After experiencing a full seizure, plaintiff testified that she will not wake up for eight or nine hours and will feel really tired when she does wake up. (Tr. 48-49). After waking up, she will not feel "right" for about three hours. Plaintiff testified that

3

she does take medication to prevent her seizures but she still experiences them so her doctors have been making adjustments to her medication. (Tr. 49). This medication also makes her drowsy and sometimes dizzy. (Tr. 58). Plaintiff testified that her doctors had told her about a very costly surgical procedure she could undergo to possibly help her seizures but she does not have the financial resources to pursue this treatment. (Tr. 55, 61).

Plaintiff testified she also has problems with her left shoulder. (Tr. 50). She explained that during one of her seizures she dislocated her shoulder. She testified since that time her shoulder dislocates about twice a month when she lifts too much or she reaches high above her head. (Tr. 50, 52). When her shoulder does pop out, plaintiff testified she makes everyone leave her alone and she will work it back into place. (Tr. 52). Plaintiff testified that she has been told she will need her joint replaced.

Mr. Michael Lala, a vocational expert, testified plaintiff's past relevant work consists of work as a cook which is considered medium, skilled work, heavy work as performed by plaintiff; a baker helper, which is considered light to medium, semi-skilled work; an order filler which is considered heavy, unskilled work; a packing inspector which is considered medium, unskilled work, light work as performed by plaintiff; a cutting room worker which is considered light, unskilled work, medium work as performed by plaintiff; a fiberglass worker which is considered medium, semiskilled work, light work as performed by plaintiff; a bundleler which is considered light, unskilled work, medium work as performed by plaintiff; a frozen food packer which is considered medium, unskilled work, an electrical inspector which is considered medium skilled work, heavy work as performed by plaintiff; and a cable maker which is considered light to heavy, semi-skilled work. (Tr. 63-64). After listening to the ALJ's hypothetical questions (Tr.

64-65), Mr. Lala testified plaintiff could perform all of her past work. (Tr. 65). If plaintiff's testimony was presumed to be credible, Mr. Lala testified there would be no jobs available that she could perform. (Tr. 65).

The pertinent medical evidence in this case reflects the following. Prior to the relevant time period of February 1, 1999, through May 23, 2001, plaintiff sought treatment for her seizure disorder, left shoulder dislocation, multiple pregnancy complications, gastorenteritis, headaches and various other problems. (Tr. 174-399, 401- 411).

On January 14, 1999, plaintiff entered the Baxter County Regional Hospital (Baxter) emergency room reporting that she had a seizure earlier that morning. (Tr. 412). Plaintiff reported she had driven her truck to work and apparently stopped and had a seizure. (Tr. 413). Dr. Philip Burford's notes indicate plaintiff has a known seizure disorder and has been worked up extensively, including electroencephalogram, CT scan, and MRI. Dr. Burford noted plaintiff was seen on January 12th for a break-through seizure and that her Tegretol level at that time was on the low side. Plaintiff reported that she did have an aura prior to her seizures. Plaintiff underwent an electrocardiogram which was normal. (Tr. 419). Plaintiff was diagnosed with a break-through seizure. Plaintiff was given 200 mg extra of Tegretol and 10 mg of Diazepam. She was instructed to see her neurologist for a possible increase. She was also instructed not to drive and to have her family members monitor her. (Tr. 414).

Plaintiff entered the Baxter emergency room on February 16, 1999, complaining of a frequent loss of balance without seizure activity over the past two to three weeks. (Tr. 422). Plaintiff reported she had fallen against her right cheek in the shower earlier that morning. She denied a loss of consciousness. X-rays taken of plaintiff's facial bones revealed no facial

5

fracture. (Tr. 425). A CT scan was recommended if there was a high clinical suspicion for a subtle or occult fracture. Plaintiff was discharged in stable condition. (Tr. 427).

Plaintiff underwent a cranial CT scan on February 18, 1999, which revealed no definite acute abnormality. (Tr. 428).

On April 22, 1999, Dr. Robert Redd, a non-examining, medical consultant, completed a RFC assessment stating that no exertional, postural, manipulative, visual or communicative limitations were evident. (Tr. 429-437). However, Dr. Redd indicated plaintiff was to avoid all exposure to hazards which included driving. (Tr. 433).

In November of 2000, a physician completed a Physician's Statement of Employability opining plaintiff was permanently "unable to work at employment of any kind." (Tr. 443).

There is also an undated seizure precautions list indicating plaintiff was not to drive motor vehicles; not to ride a bicycle on streets where cars are being driven; not to do anything involving heights such as climbing tress or being on the roof, not to operate dangerous equipment, to stand back from open fire or hot surfaces; and to refrain from swimming unless plaintiff was with someone that could rescue her. (Tr. 444).

Progress notes dated June 2, 1999, July 30, 1999, September 7, 1999, January 3, 2000, June 2, 2000, and February 19, 2001, indicate plaintiff received medication refills. (Tr. 453-454). On June 2, 2000, Dr. Ahrens did see plaintiff and noted her seizure disorder. He noted plaintiff did not drive and that she had had three seizures.[2]

---

[2] The progress notes reporting these seizures is almost illegible so we cannot determine the time period of these seizures.

AO72A
(Rev. 8/82)

On November 24, 2002, Dr. Bob Ahrens, by checking an "x," indicated that plaintiff met the requirements of Listing 11.02. (Tr. 449-450).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

7

1382(3)©. A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We will first discuss the ALJ's determination that plaintiff did not meet the epilepsy Listing 11.02 or 11.03. Section Listing 11.02 states:

> Epilepsy-major motor seizures, (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02.

AO72A
(Rev. 8/82)

Section Listing 11.03 states:

> Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.

The ALJ found that plaintiff did not meet the requirements of either Listing. Dr. Ahrens did opine that plaintiff met Listing 11.02. However, he failed to indicate what objective medical evidence he used as a basis for his finding. A review of the record does not show plaintiff had abnormal EEGs nor does it show plaintiff had daytime or nocturnal episodes. Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff does not meet the Listing requirements for epilepsy.

We now address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that

9

[a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The medical evidence shows plaintiff first experienced seizures in 1993, after being involved in two accidents where she hit her head, and began taking medication to control them. At the April 16, 2001, hearing before the ALJ, plaintiff testified that she experiences three to four full seizures a month. However, during the relevant time period, there is only one notation dated June 2, 2000, indicating that plaintiff had experienced a seizure. There are progress notes indicating that plaintiff requested and received medication refills but there is no indication that plaintiff had on-going break-through seizures during the relevant time period. *See Johnston v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (holding that impairments controllable or amendable to treatment do not support a finding of total disability); *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). Accordingly, we find there is substantial evidence of record to support the ALJ's determination that plaintiff's seizure disorder is not disabling.

With regard to plaintiff's alleged shoulder problems, the medical records fail to show plaintiff sought treatment for this problem during the relevant time period. There are medical records indicating plaintiff had dislocated her shoulder but all objective evidence failed to reveal

a fracture or dislocation. (Tr. 260, 288). Plaintiff failed to report problems with her shoulder to her physicians any time during the relevant time period. .*See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain); *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that the lack of medical evidence supporting a claimant's subjective complaints is a factor that supports the discounting of such complaints). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff does not have a disabling shoulder impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. Plaintiff testified that she is able to go to the grocery store, to church once in a while, to garage sales once every two months and to the laundromat. Plaintiff further testified that her ability to walk, stand and sit have not changed but due to her shoulder problems she does have difficulty lifting. In a Supplemental Interview Outline, dated March 6, 1999, plaintiff indicated she could take care of her personal needs and perform most household chores, including doing laundry, washing dishes, changing sheets, vacuuming, taking out the trash and washing the car. (Tr. 160). Plaintiff noted that she was told not to work around sharp objects or to drive. However, plaintiff indicated if someone drove her she could shop for clothes and groceries and go to the bank and Post Office. Plaintiff also reported that she could prepare cold meals, pay bills, walk for errands and exercise, use public transportation, listen to the radio, read, visit with friends and relatives and play cards. (Tr. 161). *Cf. Gray v.* Apfel, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff's ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with his subjective complaints); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ALJ properly discounted claimant's subjective

11

complaints on basis that claimant was able to care for child, drive car, and sometimes go to grocery store); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate; claimant's visits with her children indicated she could engage in some social functioning).

Therefore, although it is clear that plaintiff's abilities are limited, she has not established that she is unable to engage in any gainful activity. Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints are only credible to the extent that they support the ALJ's assessment of her RFC.

We next turn to the ALJ's assessment of plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

12

In the present case, the ALJ considered a medical assessment prepared by a non-examining agency medical consultant, a physician's statement of employability, a physician's opinion that plaintiff met the Listing 11.02, plaintiff's subjective complaints, and her medical records. On April 22, 1999, Dr. Robert Redd, a non-examining consultant, completed a RFC assessment of plaintiff. He concluded that plaintiff had no exertional, postural, manipulative, visual or communicative limitations. However, Dr. Redd indicated plaintiff was to avoid all exposure to hazards which included driving.

While we are aware that one of plaintiff's treating physician's completed a physician's statement of employability indicating that plaintiff was "unable to work at employment of any kind," we can find no support in the record for this conclusion. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003) (holding that ALJ did not err in failing to credit treating physician's opinion because those opinions were inconsistent and not fully supported by medical evidence); *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). Furthermore, it is the ALJ's duty to determine plaintiff's employability. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1992.) (physician's conclusion that claimant was unemployable was not a medical opinion but a vocational conclusion outside physician's area of expertise). Therefore, based on our above discussion of the medical evidence and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC determination.

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed

13

to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as she is able to perform her past relevant work. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed and plaintiff's Complaint should be dismissed with prejudice

DATED this 26th day of August 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)